This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                      **NO. 31,932**

**FERNANDO LUCERO,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**GARCIA, Judge.**

The State appeals the district court's order granting Defendant Fernando Lucero's motion to suppress. Based on the facts and arguments presented to the district court, we find no error. Accordingly, we affirm.

In the district court, Defendant moved to suppress the evidence obtained during a traffic stop based on his assertion that the officer did not have an objectively reasonable suspicion that he had violated NMSA 1978, Section 66-7-317(A) (1978), when the officer pulled him over. Section 66-7-317(A) provides that when a road has two or more marked lanes for traffic, "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]" At the hearing on the motion, the State presented evidence that the officer observed Defendant's vehicle's tires cross over the outer lane line that separates the lane from the shoulder of the road three separate times. After each time, Defendant's vehicle would move back into the lane. The officer also observed Defendant move to the edge of his lane so that his vehicle's tires touched the lane line twice. These observations occurred over a span of two-and-a-half miles. The officer testified that he pulled Defendant over because if a driver crosses the outside lane line once, it might just be due to momentary inattention, but once a driver has crossed the outside lane line two or three times in a short period of time, then there is a reason to be concerned about

2

impairment.

Defendant argued that the evidence did not support a reasonable suspicion that he had violated Section 66-7-317(A), while the State argued that it did support a violation of the statute. The State's argument focused on the language of Section 66-7-317(A), quoting it twice. Although the officer testified that he had based his stop on his suspicion that Defendant might be impaired, the State did not address or argue the possibility of impairment or any other statutory basis for the stop. The district court granted Defendant's motion, concluding that the facts observed by the officer did not provide a reasonable suspicion that he had violated Section 66-7-317(A).

We review the district court's ruling de novo. *See State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922 (stating that a ruling on a motion to suppress is reviewed de novo). Such a ruling involves a mixed question of fact and law, and where, as here, the district court did not set out its findings of fact and conclusions of law, we will draw all reasonable inferences from the facts in favor of the district court's ruling. *Id.* Because neither party addressed the constitutionality of the stop under the New Mexico Constitution nor argues that our reasonable suspicion standard differs from the standard applied under the Fourth Amendment to the United States Constitution, we analyze the constitutionality of the stop under the Fourth Amendment. *See State v. Ketelson,* 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257

3

P.3d 957 (explaining that under New Mexico's interstitial approach to state constitutional interpretation, a court will consider whether the right asserted is protected under the federal constitution before examining the state constitution); *State v. Hubble*, 2009-NMSC-014, ¶ 6, 146 N.M. 70, 206 P.3d 579 (stating that the New Mexico Supreme Court would address the question of reasonable suspicion only under the Fourth Amendment when the defendant did not argue that the state constitution afforded him greater protection).

"A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). "The test is an objective one." *Id.* (internal quotation marks and citation omitted). "The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *Id.* (internal quotation marks and citation omitted). "[C]onduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *Id.* ¶ 23 (internal quotation marks and citation omitted).

Section 66-7-317(A) provides that

> [w]henever any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

This statute is not unique to New Mexico, and the parties have cited cases from other jurisdictions interpreting the language of identical or substantially similar statutes in ways that support their respective positions. However, in *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975), our Supreme Court construed NMSA 1953, Section 64-18-16(a) (1953) (current version at Section 66-7-317), a statute requiring a person to drive a vehicle "as nearly as practicable entirely within a single lane" and to not move the vehicle from its lane "until the driver has first ascertained that such movement can be made with safety[.]" Although Section 64-18-16(a) was renumbered in 1978, its language remained the same. The current embodiment of Section 64-18-16(a) is Section 66-7-317(A). Accordingly, *Archibeque* controls our interpretation of the meaning of Section 66-7-317(A), and we will not consider the out-of-jurisdiction authorities cited by the parties.

In *Archibeque*, the owner of a vehicle and his passenger, a hitchhiker, were killed in a one-vehicle accident. 88 N.M. at 528, 543 P.2d at 821. The hitchhiker had been driving the vehicle at the time of the accident, and the owner's estate filed a wrongful death suit against the hitchhiker's estate. *Id.* At trial, there was evidence

5

presented that the vehicle veered to its left prior to the accident, crossing the left lane designated for oncoming traffic, and then traveled along the left shoulder for a distance of 274 feet before crossing back over the left lane, then crossing the right lane, and finally driving onto the right shoulder before leaving the road altogether and plunging into an arroyo. *Id.* An expert testified that it appeared that the hitchhiker had likely fallen asleep. *Id.* at 529, 543 P.2d at 822. The owner's estate requested a jury instruction on negligence per se, which would have instructed the jury that the hitchhiker's violation of Section 64-18-16(a) constituted negligence as a matter of law. *Archibeque,* 88 N.M. at 532, 543 P.2d at 825. Our Supreme Court held that the district court properly refused to give the instruction. *Id.* Although our Supreme Court recognized that the purpose of the statute was to protect the motoring public in general—including those inside the vehicle that fails to maintain its lane—it held that the harm sought to be prevented by the statute is "head-on collisions or sideswiping the opposite moving traffic." *Id.* Since there was no evidence that there was any oncoming traffic that was threatened or harmed, our Supreme Court determined the statute was inapplicable. *See id.*

In this case, the officer specifically testified that there were no other vehicles around when Defendant's vehicle's tires were observed crossing and touching the outside lane line. Although the officer might have had a reasonable suspicion that

6

Defendant was not checking in order to ascertain whether it was safe to drift onto the shoulder three times, *Archibeque* indicates that Section 66-7-317(A) is not intended to cover situations where the person driving a vehicle unintentionally lets the vehicle stray from its lane when there is no other traffic that it might either sideswipe or collide with. Accordingly, where the officer saw no other traffic near Defendant's vehicle, he did not have an objectively reasonable basis to suspect that Defendant had violated Section 66-7-317(A) by his manner of driving.

In this case, however, the officer testified that he pulled Defendant over due to concerns about possible impairment, not just a suspicion that Defendant had violated Section 66-7-317(A). As a result, the State argues that this Court should reverse the district court because the officer had a reasonable suspicion that Defendant was violating the statutes that prohibit careless driving and driving while impaired by alcohol or drugs. The officer's testimony could support the reasonableness of the stop and the detention might be proper if the facts known to the officer provided an objectively reasonable suspicion that Defendant was violating some other statute. *See State v. Anaya*, 2008-NMCA-020, ¶ 15, 143 N.M. 431, 176 P.3d 1163 ("[C]onduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld."). But the State was required to

actually present and preserve this argument in the district court in order to have it reviewed by this Court on appeal. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) (declining to review an argument by the appellant when the district court "had no opportunity to consider the merits of, or to rule intelligently on" that argument). In this case, the State failed to make this argument to the district court.

The closest the State came to arguing that there was some other legal basis for the stop was when it stated that the violation of the law was crossing the lane line, and that when it happened three times, it is proper for an officer to pull the person over because the person might be "chatting on the phone." This argument by the State, focused on the language and import of Section 66-7-317(A), expressly stated that the statutory violation at issue was crossing the lane line arising from a distraction—talking on the phone. As such, the State failed to alert the district court to any argument that the officer had an independent statutory basis for the stop, distinct from any mistaken belief that Defendant had violated Section 66-7-317(A). To the degree that the State suggests that the officer's testimony might be sufficient to preserve the State's legal argument, the State cites no authority to support its claim that witness testimony alone can raise or preserve a legal argument for the

prosecution, and we therefore assume that no such authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

The State also argues that even if Defendant's driving did not actually violate Section 66-7-317(A), such an error need not vitiate an objectively reasonable suspicion that the single lane statute was violated. However, it does not explain how the facts were sufficient to support an objectively reasonable suspicion of such a violation under *Hubble, Anaya*, and *Archibeque*. The State relies on an unpublished memorandum opinion, *State v. Jamon*, No. 31,578, slip op. at 5-6 (N.M. Ct. App. June 5, 2012), for its argument that a mistaken belief regarding whether a driver has violated Section 66-7-317 would nevertheless provide a reasonable suspicion to support the stop. This argument is not well taken.

Unpublished decisions are not meant to be used as precedent. Rule 12-405(A) NMRA; *see Anaya*, 2008-NMCA-020, ¶ 18. In addition, the facts in *Jamon* are inapplicable to the case at bar. In that case, the facts known to the officer supported an independent reasonable suspicion that the defendant was driving while intoxicated, *and* the district court recognized this alternative basis for reasonable suspicion at trial. Therefore, that case simply involved an application of the principle that even if one reason for the stop is based on a mistake of law, the stop may still be justified before the district court if facts articulated by the officer provide reasonable suspicion that

the defendant was breaking some other law. *See Hubble*, 2009-NMSC-014, ¶¶ 28-29. It does not authorize an officer to mistakenly stop a driver based solely upon conduct that does not violate the only statutory offense relied upon by the state in the district court proceedings.

For these foregoing reasons, we affirm the order of the district court.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**